## No. 10,883.

### THE NATCHEZ AND NEW ORLEANS PACKET AND NAVIGATION COMPANY VS. LOUISVILLE UNDERWRITERS ET ALS.

The steamer having been reduced to a wreck, an abandonment was made under the marine insurance laws.

The share that the insurers are to have in the abandonment has the same proportion to it that the sum insured has to the total value of the steamer.

The insurance being for two-thirds of the value as fixed in the policies, the interests of the insurers is two-thirds in the wreck; that of the owner for the remaining one-third not insured is one-third in the wreck.

The assured is his own insurer with respect to his uncovered interest.

He is in some manner a partner with the insurers; he comes into concurrence with them on the portion saved for his uninsured interest.

Agents while acting to the extent of and in proportion to the interest insured must necessarily act for the common interest of all concerned, being undivided.

By means of the the abandonment the insurers are obliged to pay the amount for which the property is insured.

Under the laws regulating salvage the recovery of the effects wrecked is made for account of all parties concerned for whom the agents act.

Their acts can not affect part of the interest insured to the detriment of the other, as each shares in the property saved in proportion to the interest insured.

It being stated that there was an agreement made with the agent relative to salvage, the date and particulars of which are not given, and it not being alleged that it was a distinct obligation arising over and above the policies, whatever rights plaintiffs may have under a separate agreement are reserved.

A PPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

*B. B. Howard* and *Branch K. Miller* for Plaintiff and Appellant:

If the total loss insured does not equal the value of the thing insured, the owner is his own insurer for the difference, and is entitled to a *pro rata* share of the

proceeds of the wreck. 11 An. 459; 6 O. St. 200; 9 Cushing (Mass.), 302; 4 Peters, U. S., 144; 2 Woods, U. S. C. C., 490.

After a valid abandonment, the master of an insured vessel is solely and exclusively the agent of the underwriter. 3 Kent Com. 322; 13 Mo. 527; 9 Johnson (N. Y.), 25; 7 Johnson (N. Y.), 519; 17 An. 46; 19 La. 270-271; 6 Cranch, 272.

### *J. R. Beckwith* for Defendants and Appellees:

1. If in a valued policy of marine insurance the policy only covers two-thirds of the agreed or stated value of the vessel insured, and in case of constructive total loss the owners are held to be insurers for themselves of the one-third not covered by policy, there can be no general abandonment that will carry the entire property and title to the insurer having a policy on the vessel insured for partial value. Abandonment in such case would only carry title *pro tanto* to insurer as per rate of interest covered by policy, leaving one-third title to the owners as their own insurers. Philips vs Insurance Company, 11 An. 459; Cincinnati Insurance Company vs. Duffield, 6 Ohio St. 200.

2. In maritime insurance, in case of actual or constructive total loss of a vessel, even when the entire agreed value of the vessel is covered by policy or underwritten, the owners and master from the time of attempted abandonment to the insurer as total loss become the agents of the insurer, and are bound to faithful discharge of duty as *negotiorum gestores* to safeguard and save all property and wreckage, and can not charge the insurer with any loss resulting from their own negligence or want of energy or care in rescuing property from destruction, and it is their duty to stand by the wreck and save property until they can physically turn the wrecked vessel over to the insurers after actual acceptance of the abandonment by the insurer. Gardere vs. Ins. Co., 7 Johns. 514; Collett vs. Ins. Co., 1 Wend. 561; 4 Wend. 75; Gordon vs. Ins. Co., 2 Rick. 249; Mellon vs. Bucks, 17 Martin, 371; Robertson vs. Ins. Co., 19 La. 227.

3. Where the loss is not total or absolute, but only a disabling or stranding of the vessel, it is the duty of the assured to act with the same energy, and use such means to save the vessel as a prudent man would do under the same circumstances if not insured; he is honestly to use all such means as are at his command to save the vessel or any part thereof that can be saved from destruction. Copelin vs. Insurance Company, 46 Mo. 211; The Sarah Ann, 10 Sumner, 215; Hundhausen vs. Insurance Company, 17 S. W. Rep. 152; Robertson vs. Insurance Company, 17 La. 227.

4. If the owners of the Natchez were insurers for themselves of one-third of the vessel at the time of the stranding, no abandonment could relieve the master and owners from the duty of preserving or saving the vessel or any part thereof that could be saved from loss as joint owners in common undivided title; in the event of valid and effective abandonment of insured interest the master, in the absence of the owners, was the agent of the owners for that purpose. Robertson vs. Insurance Compny, 17 La. 227.

5. The petition discloses no right in the assured to abandon the vessel generally to all of the defendants collectively, there being no contract relation existing between the defendants by which they could take title in common by general abandonment. The interest of each insurer being several, the abandonment, if made, should have been several, to the extent that the several insurers would take interest by virtue of risk underwritten by each.

6. The judgment prayed for being a judgment *in solido* against all of the defendants, the petition does not disclose a cause of action unless it discloses *in solido* liability.

The opinion of the court was delivered by

BREAUX, J.   The plaintiffs claim of the defendants the sum of twenty eight thousand dollars, and in support of their claim allege that they were the owners of the steamer Natchez, insured in the defendant companies.

That for insurance it was valued at $30,000, although it was really of the value of $90,000.

That on the 1st of January, 1889, the steamer struck a hidden obstruction and became a total loss by sinking in the Mississippi, at or near Lake Providence, La.; that the loss was covered by the policies issued.

That the defendants were notified on the day of the loss, and the steamer was at the time abandoned to the agents of the defendant companies, who accepted the same, having authority to take custody and control of the wreck.

That it was their duty and their agreement to proceed immediately to the salvage of the wreck of said steamer for the benefit of themselves and of petitioners, who were the owners of the wreck, to the extent of the value of the uninsured portion of the steamer.

That in violation of their duty and in collusion against petitioners the said agents delayed and neglected to take any step whatever toward the salvage of the wreck.

That by not acting in time, as they should, the wreck went to pieces, and the salvage was made impossible by the rising waters.

It is argued by plaintiffs' counsel that plaintiffs are entitled to recover, under the terms of the policies, and in the second place that the insurers had, under an agreement, undertaken an additional liability, as we understand it, over and above the insurance properly so called and of a different nature.

These propositions will be taken up separately hereafter in discussing the issues and in reaching a conclusion.

The policies are not annexed to the petition.

It is only alleged that "certain policies of insurance against loss by river peril on the steamer Natchez" were held by plaintiffs.

The clauses are not set forth.

The defendants filed the plea of no cause of action.

In support of this plea they submit the propositions that abandonment in marine insurance does not convey title to insurers of interest uninsured and still held by the owner in the property abandoned.

That the owners and master, from the time of the attempt at abandonment to the insurer as total loss, became the agents of the insurer in safeguarding and saving the property and wreckage until a physical delivery of the wreck has been made.

That it is the duty of the assured, where the loss is not total, to use the same means as a prudent man would use to save his property if not insured.

That if the owners were their own insurers of one-third of the steamer, an abandonment did not relieve the master and owners from preserving and saving the vessel, or any part thereof; being owners in indivision with the defendants.

That for the purpose of effecting the abandonment the master was the agent of the owners.

That an abandonment could not be made to the defendants collectively, there being no contractual relations among them with plaintiffs by which they could be vested with title in common by general abandonment.

There being no plea of misjoinder, the last proposition will not be considered.

The proportion of ownership in the wreck and the rights of the parties is one-third by the plaintiff, and two-thirds by the defendants.

This is the ratio between the insurance, $20,000, and the value of the property, viz.: $30,000, as agreed upon under the policy, and which must be taken as a basis in establishing the interest of insurers and of the assured in the property saved.

The District Judge in a clear and elaborate opinion, propounds the questions: " Why should defendants, holding two-thirds interest in the wreck vested in them, after the sinking of the boat, by notice of abandonment for the purpose of affixing their liability for the whole insurance, be held to a higher standard of duty than plaintiffs, who carried one-third the risk, and who in consequence remained owner to that extent? Why should the defendants be held to the duty of prompt wrecking and salvage and plaintiffs be released in full therefrom, they having a common agent, i. e., the master in charge?"

In maintaining the exception of no cause of action the court answers these questions as follows:

" They were joint owners for one-third and two-thirds respectively, by the legal effect of abandonment. The contracts of insurance were the only bonds between them, and fixed their relationship to

each other, and this plaintiff's can not change by allegation of a value different from that set forth in the policies.

"Thus contractually related, they had, as common agent, after the notice of abandonment, *i. e.*, the master of the boat, and he was on the spot, whereas defendants' accustomed agents were in this city (New Orleans), and only constructively in possession in virtue of the notice of abandonment. Plaintiffs' master and crew were in the boat at Lake Providence, near the Arkansas line, and, although legally and technically he was defendants' agent as well, yet, in truth, defendants' agents were hundreds of miles away. That officer represented, after the notice of abandonment had been sent, the defendants for two-thirds and the plaintiffs for one-third. The effect of the neglect charged was to lose to defendants their two-thirds, which, by contract, they must pay to plaintiff without possibility of recovery from salvage of the boat. Its effect as to plaintiff was the loss only of one-third interest, and this loss was the act of their · agent. The fact that he was also defendants' agent does not alter the case."

We are referred by plaintiffs' counsel to the case of plaintiffs against said defendants, 42 Fed. Rep. 169, District Court, Eastern District of Louisiana, in which it recovered judgment for premium on its policies, leaving plaintiffs' claim obviously one for a proportion in property lost by the negligence of defendants' agent in not safe-guarding the wreck after the abandonment alleged.

The assured may give the underwriters notice that he abandons the wreck to them, and claims for a total loss when the vessel is converted into such a wreck that it would cost more money to repair her than she would sell for when repaired. Arnould on Marine Ins., p. 14.

The steamer was a complete wreck and not repairable.

The form of the notice of abandonment and the time at which it was given, are not subject of controversy.

In making the election whether to treat the loss as total or not so treat it, to repair or abandon, the plaintiffs in electing the latter expressly retained their interest in the wreck.

The notice, it is alleged, was given to one agent as representing all the companies.

"A total loss," says Chancellor Kent, Vol. III, p. 413, "within the meaning of the policy, may arise either by the total destruction

of the thing insured, or, if it specifically remains, by such damages to it as renders it of little or no value.  *  *  *  In such cases the insured may abandon all his interest in the subject insured and all his hope of recovery to the insurer, and it falls upon him to pay as for a total loss."

Plaintiffs alleged that they were the owners to the extent of the value of the steamer not insured.

Whoever insures a part of his property, in case of its abandonment, under marine insusurance, is owner of the remainder.

The portion saved, after payment of the expenses, is divided in proportion to the interest of each.

This court, in a well considered decision, held, where part of the valuation was insured, that the owner becomes his own underwriter for the rest.   11 An. 459.

The insurer has the right to claim abandonment " *in proportion to the aliquot part insured.*"   Emerigon, p. 723.

Plaintiffs contend, under the first proposition, that it was the duty of the defendants to take steps toward the salvage of the said wreck, and that they are responsible for the negligence of their alleged agents.

The character of the agency alleged, and the principals represented and their interests, must be considered.

First, as to the master, in an emergency he· acts for all concerned.

In taking steps with the view of the abandonment he is the agent of the assured.

After notice of abandonment, if accepted or if made on good ground, whether accepted or not, the ownership of the abandoned property is vested in the insurer and he becomes their agent in all acts done by him from that time "within the scope of the authority given to him by the policy to sue, labor and travel, for the defence, safeguard and recovery of the subject insured." Arnould, p. 364.

The negligence of the common agent can not be taxed to the companies, and not to the assured, while acting under his general authority.

Why should the assured have a right of action against his co-principals?

The master represents his interests as completely as he does that of any of the other insurers.

The master being on the spot and not advised by the companies, the insurer, was not exclusively their agent, under the clauses of the policies, as alleged, and can not by his negligence make them responsible in damages.

" For his uncovered interest the assured is considered as insurer to himself; he is in some manner a partner with the insurers." *Pro reliqua parte non assecurata, ipse dominus mercium dicitur sui ipsius assecurator, vel assecurationis socius.* Emerigon, p. 723.

The agent of the *quasi* partnership, acting under its articles, will not bind one in damages to the detriment of the others.

" Since the effects shipwrecked or arrested continue until abandonment, to belong to the assured, and it is equitable that he should assuage, as far as possible, the fate of his insurers." Emerigon, p. 688.

No question of negligence of the master, either previous to or subsequent to the loss, is raised in the case. As he was a worthy officer in charge, it must be presumed that he did all that good conduct required in the interest of the assured and of the insurers.

" The abandonment is one thing, and the account of what is saved another." Emerigon, 691.

The notice of the abandonment was received by the common agent.

The interest of plaintiffs' is not distinct from those of the defendants and these alleged agents in matter of abandonment and saving the property, represented the interest involved of the partnership, *quoad* the wreck.

Salvage after abandonment is not entirely for account of the companies. They are not responsible for the acts of agents not specially theirs.

The agreement, briefly alleged, was not as a distinct and direct promise made to take physical possession of the wreck and to proceed to save as much of the property as possible.

Dates and particulars are not given.

The alleged agencies seem to spring from the clauses of the policies.

It is not considered as part of a right over and above the insurance policies.

This inference will not prejudice any claim plaintiffs may have if they received a special promise under an agreement, the violation of which caused damages.

All rights under an agreement undertaken as an additional liability are reserved.

After reserving rights as before mentioned, judgment is affirmed at appellee's costs.